The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Good morning, gentlemen. Good morning. Good morning, Your Honor. We're here on case number 421-0612. That's People v. Mays. Would counsel for the appellate please identify yourself for the record? My name is Austin Wright. I'm with OSAD. Thank you. And for the appellee, would you please state your name for the record? Douglas Maltham for the state. Okay, thank you. Mr. Wright, you may proceed with your argument. Thank you, Justice Turner. Good morning, Your Honors. Good morning, counsel. My name is Austin Wright. And as I said, I'm with OSAD and I'm on behalf of Mr. Mays. This case presents really one overarching question that's relatively narrow and straightforward. And that is, did the properly admitted evidence overwhelmingly support sending Sidney Mays to prison for the rest of his life for murdering a friend and others and making an attempt on the life of a child? And the answer to that question is no. The improper evidence here comprised the state's only evidence that Sidney had a motive to commit the crime charged, that Sidney had the means to commit that crime. And it also involved a critical misrecollection testimony that undercut the defense. Turning first to the errors in Argument 1, the trial court affirmatively made two critical mistakes during its decision-making process. First, it relied on People's Exhibit 48 as evidence that Sidney had a motive to commit the crime despite it being incompetent for that purpose. And it also misremembered a crucial part of Randy Nesby's testimony. This case was circumstantial. And like many cases of that nature, a critical question was motive. The first question the court asked when it began its verdict was, why did this happen? And the court believed it was likely because of drugs or money. And then the court said that it considered the large amount of cash shown on People's Exhibit 48. This was largely consistent with how the state argued that exhibit below. It said why this happened was lottery by robbery, and it said People's 48 was a component thereof. The state said that this was lottery by robbery, and the court agreed with that. But this was error. More than 30 years ago, the Supreme Court said that when the state undertakes to prove facts which it asserts constitute a motive to commit the charged crime, the state must show that the accused was aware of those facts. But in this case, despite the state acquiring records associated with Sidney's Snapchat with Cor Jackson's Snapchat, we have no evidence the two had even added each other as friends on that app, let alone any evidence that Sidney ever saw the video before he made his planned trip to visit his friend. And this appeal of state suggests that the court simply considered the evidentiary value of the motive, but that's simply belied by a plain reading of the trial court's verdict. Turning to Randy Nesby's testimony, the court misrecalled when and where Randy Nesby saw Jamari Watkins pacing and acting weird. At trial, Randy Nesby testified that Jaquan and Jamari went to his house between 4.45 and 5.15 on the day of the shooting. This was after they had returned from Peoria. By that time, Randy had heard about the shootings that had happened at Riley Drive, and he brought it up in conversation. He said that Jamari was pacing, he was acting weird, he was out smoking a cigarette. When the court recounted its verdict, it said that Randy Nesby actually went to Jaquan and Jamari's house before they left for Peoria. And then at that time, that would have placed him there with Jaquan, Jamari, and Sidney. And at that time, before they left for Peoria, the court said Jamari was acting weird. Why does that matter if Jamari's acting weird? How does that work against your client? I don't get that. Your Honor, so why this was critical was that part of the defense theory at trial that Attorney Clancy advanced was that Sidney and the people he was with, they weren't acting like people who had just fled from the scene of a shooting, right? They were taking their time. So the evidence was actually that they went to Jaquan and Jamari's house, and Jamari took the time to roll a joint to smoke on the drive to Peoria. Under the trial court's reading of the record, Jamari had—the murder had been brought up to him in conversation at that time, and that caused him to start pacing and acting weird and smoking a cigarette. It was also crucial because it led the court seemingly to discount direct evidence of Sidney's mannerisms after the fact. Jaquan Howard testified that Sidney was in his phone on the trip to Peoria, that he had somehow, either through a text or Facebook, had discovered that Nate was the victim of the shooting, and he started crying. The court said—and this was sort of more along the lines when it was examining the timeline—but the court said Sidney knew that Nate was the victim. Sidney already knew about the shootings when he got into the car. So it was critical because instead of allowing the defense theory to proceed in that, they weren't acting oddly in the video at any time afterwards. Now the court believes immediately after they went to Riley Drive, everyone was aware of the shooting, and Jamari was nervously pacing. And so, like I said, this was critical, and now the question turns to, there's no dispute that either of these errors were preserved for this court's review. That means that the burden is on the state to demonstrate that they were harmless beyond a reasonable doubt, that they didn't contribute to the verdict, and the state can't meet that burden in this case because the errors occurred during the trial court's decision-making process, so we know they contributed to the verdict. Harmless error analysis looks only to the properly admitted evidence, so with the improper evidence from the equation in this case, and that improper evidence, like I said, was the state's evidence of motive, the state's evidence of means, and the misrecollection we just talked about. What's left? Well, no physical evidence tied Sidney to the crime, so really what we have is speculation about what happened based on the timeline. So we know that to start the day, Nate was riding around town with his sister Gabrielle Sweeney. She's driving, Nate's in the passenger seat, Nate FaceTimes with Sidney, Gabrielle can hear the conversation. They talk about how Sidney plans to go over to apartment 9 that day, and he in fact does make that trip. He gets there sometime after 121, after Kiera Heard leaves, and so at 210, he sends a text to Jaquan. He offers him a ride, he asks for a ride, and he offers him money to do that, and we know this isn't out of the ordinary because Sidney doesn't drive. He frequently asks people for rides. Jaquan, when he's that person that gets asked, he requires money because he doesn't have a job. We see Breanna Watkins comes in at 212. This is the last time we know Sidney's in the apartment. She goes back to her room, she closes the door, she goes into the bathroom to change her clothes at some point, and we know at 214, Sidney sends Jaquan a text. He says park down at 307. So from 212 to 237 though, we don't actually have any confirmation that Sidney's in apartment 9. 237 is when we see him run to the trailblazer. At that time, there's no dispute he's running, and he says they're shooting, but I would submit that there's nothing out of the ordinary there. We have to place that behavior in context. He's in the middle of Bloomington. He's just heard gunshots. Particularly, any human would run from that, let alone at an apartment building where there was a shooting the week before. He's not in the timber during hunting season. So leaving from Riley Drive, the trailblazer itself does not drive erratically or not normally. As we see on People's Exhibit 45, it slowly approaches the T intersection at Riley Drive, and maybe it's pronounced Mashurl. It slows. It appears to use its turn signal, which is more than can be said for most of the other cars on that recording. Then from there, they go to Jaquan and Jamari's house. Sidney has time to take a shirt, change his shirt. He's sweated. He'd just been running. He's a heavier adult male. It's middle of summer. Jamari, like I said earlier, also takes his time to roll a joint to smoke on the ride to Peoria. From there, what happens next? The trailblazer breaks down. Are they in a hurry to get out of the area? They take the time to call a tow truck driver. Before the tow truck driver gets there, Trooper Sweeney pulls up to effect a motorist assist. We can see on his dash cam footage that everyone interacted just fine with the police. There did not seem to be any issue there. And then after Trooper Sweeney pulls off is when Robert Schrand, a tow truck driver, arrives. He said it just acted like there were just three guys on the side of the road who'd broken down. Council, let me interject. Can you concede or would you concede or let me know what you think about the idea that two of the three individuals in whatever type of car this is are potentially allegedly unaware that a shooting has occurred? Could you repeat your question, please, your honor? Yeah, essentially that two of the three there's evidence of two of three individuals in the vehicle may not be aware that the shooting has occurred. Two of the three had been, I'm sorry, I'm not potentially unaware that it potentially unaware that a shooting had occurred. Two out of the three people that were potentially aware of the shooting? Unaware that we're riding in the vehicle with the defendant, two other people other than the defendant in the vehicle. Well, I would submit that they were unaware what had transpired. They were aware that there was a shooting at the time they had got in the car, right? Sidney got in and said there's shooting. So as far as I suppose, I suppose what I'm getting to is potentially unaware that the defendant, the other occupant, was involved in the shooting and thus that may explain why it would appear this is a normal traffic stop and there's not sort of strange activity. Well, even if you discount the knowledge of the other two, Sidney himself approached the troopers just fine. We see, I don't remember the name of the second state trooper that pulled up after Sweeney, but Sidney is visibly conversing with him on the the dash cam footage. So I don't think that even if you discount the columnist from Jaquan and Jamari, we still see that Sidney himself. And so looking at the remainder of the state's evidence, what's incredible about this timeline is that Sidney, Jaquan and Jamari, they went several places and they saw several people and the one thing that ties them all together is that at all of these places there was no physical evidence and all these people didn't see anything associated with the crime. Sidney's DNA was on nothing left behind at apartment 9. He went straight out to the trailblazer. There was no gunshot residue found in the trailblazer. The police impounded it and they searched it at Jaquan and Jamari's house. They executed a search Nothing was recovered. Detected power and others went to the site of I-74. Found nothing of evidentiary value. So what these errors helped do is that they contributed to the verdict because they particularized the court's suspicion that Sidney had committed the crime. And we see this when the court discounted other potential evidence of other suspects. Maria Sanchez testified she saw someone with gray shoes go past her in the stairwell where it was testimony that Sidney was wearing an all-black outfit. Maria Sanchez also testified that she saw another individual in the window after the police had arrived and Sidney was long gone. Now I understand that the court said it didn't find Maria Sanchez's testimony credible just simply based on the timeline when police arrived but the fact remains that it might have rational for the court to discount this other direct evidence because it had these other improper evidence that particularized its focus on Sidney. The court also considered the fact that he left town, isn't that correct, went to Milwaukee, that he cut hair. So he didn't just rely on what you've been talking about, the motive evidence, isn't that correct counsel? Well it's he got there but we do know that his dad lives there. He goes there about once a summer. He cut his hair. A lot of people cut their hair during the summer months like we talked about. He's a heavier set male so it could just be for the temperature, right? But again we're speculating on why he did these certain things but also these errors weren't alone in threatening to tip the prior statements without first satisfying the statutory prerequisites. This is relevant in this case. The code of criminal procedure requires two things for a witness's prior statements to be substantively admissible and those are one the witness testify at trial inconsistently with a prior recorded statement and that the facts relayed in those prior statements must be based on personal knowledge. The Illinois appellate court in particular this district has really endeavored to clarify the applicability of this subsection. More than 23 years ago there was a specially concurring opinion that noted that even experienced trial courts were facing serious difficulties applying section 115-10.1. Now in the the decades since that's happened the state in this case obviously didn't heed the guidance. The state read into the record prior statements from Navarro Howard related to the relationship between Nate and Sidney that that included that there was a beef between the two that Sidney had gotten toed with the dude that Nate was out shining him. But the state never broached this topic with Navarro during his trial testimony. So if the subject didn't come up during his trial testimony it's nearly impossible for the prior inconsistent statement and the testimony to be. I thought the trial testimony was basically from the witnesses they just didn't remember. The correct that's inconsistent isn't it counsel? No the this it's the subject matter that needs to be inconsistent. The simple fact that he didn't remember the interview which occurred two and a half years before trial doesn't establish an inconsistency. And that's what the cases say? Yes you are. What's what's your case it's the best case it says that? I believe the cases that I've cited in my brief well I would look to that this court's really looked at I think are if you look at People v. Brothers, People v. Grayson, if you look at those cases it's the subject matter that the witness testifies about a trial that is inconsistent with law enforcement. In this case the state only asked Navarro do you remember saying this to the state and those are fundamentally different. But even if this court doesn't agree with me that the inconsistency was not established these prior statements related to the relationship were inadmissible for the additional reason that they weren't based on personal knowledge. Navarro himself said in those statements he said Sidney was telling me he'd gotten quote toed with the dude he said I don't know Nate I don't know Nate myself and then if Navarro hadn't made himself clear enough during those statements he went on to say I don't know shit about Nate. So in this appeal the state suggests that simply because Navarro might have perceived Sidney make those statements that that was personal knowledge. But the Illinois Supreme Court put that argument to bed about seven years ago in People v. Simpson where it explicitly said we also reject that it was the state's argument that it was the legislative intent to simply require the witness to have personal knowledge of the defendant's admission. The court said that any other reading of the personal knowledge requirement would undercut the very purpose of the section which was to ensure the trustworthiness of prior statements. And I acknowledge that Attorney Clancy did not really object on this basis below but this is a clear error that might have tipped the scales of justice against Sidney. We've been talking a lot about motive. The first question court asked was why this happened and the court said that I mean right after it asked that question it said sorry I want to get the quote correct here Navarro Howard testified as to the beef between Nate and Sidney and how Sidney thought Nate was outshining him. The court believes this to be credible evidence and goes to explain why this happened. And again the state also should not have been able to just read into the record Navarro's prior statements from the interview related to seeing Sidney with a 38 caliber. Now I know we've discussed whether or not the requisite inconsistency is established based on simply not remembering a law enforcement interview versus not remembering professing a lack of knowledge as to the actual subject matter but it's our position that the inconsistency was not established and so once again this was an error might have tipped the scales of justice against Sidney. What is the error that you're arguing to this court that the interview shouldn't have been played or just that we didn't like the way or didn't approve of the way the questions were posed? So the way that the statute works is that the state should ask the witness a question on the stand. They should say something to the effect of Navarro could you please describe the relationship between Nate and Sidney or Navarro did you see Sidney with a gun in the lead-up to the shooting and then he could say no and then the state might introduce that prior statement well then the state would bring up the interview and say do you remember an interview with law enforcement and then they would submit they would confront him with that prior statement. Okay well let me stop you there so are you arguing that the interview should not have been played because I don't see that in your brief any place. I'm just arguing that the state should not have been able to substantively admit those statements in the manner that it did and we know that it was admitted substantively because the trial court subsequently relied on them. Okay so you have no argument or objection to the fact that the interviews were played right? Well I think that one naturally subsumes the other right if the statement shouldn't have come in I don't have any objection to the fact that if the state had followed the statutory procedure right they asked Navarro the questions on the witness stand and if he then testified inconsistently with this his interview that they could have impeached him with that video because it was electronically recorded so they have the potential to properly admit that statement but they didn't do that here and so we know that that error also might have tipped the scales of justice against Sidney because another critical question for the court was the means this happened he said what was the party's access to weapons and the court twice pointed out that Navarro Juan Perez was shot with a 38 caliber weapon and that the last time Navarro saw Sidney before the shooting he had a 38 caliber. Thank you. Thank you you will have rebuttal Mr. Malcolm please proceed. May it please the court counsel defendant raises six issues in his brief I will address the first two and rest on my brief for the final four unless this court has any questions. First regarding defendants due process violation arguments the trial court did not violate defendants due process rights when it ascribed a motive to defendant and when it misstated Randy Nesby's testimony and regarding the second issue the trial court did not abuse its discretion by permitting the state to enter into evidence the witnesses prior inconsistent statements for substantive evidence purposes. First regarding the due process arguments the record clearly shows that R 1376 the trial court directly specified what evidence relied upon to answer the question why did this happen. Yes but how how is motive relevant here? The why goes to motive how is that relevant to proof beyond a reasonable doubt that the defendant committed this crime? It's it's one more brick in the house as it were a defendant makes a large deal about this and the state is seeking to respond to that however the state would contend that even if you set aside motive discussion the evidence still overwhelmingly demonstrates demonstrates defendant's guilt. Yes but didn't the court doesn't the record reflect that the court wrote misremembered testimony as counsel argued that the video which had some issues was relied upon by the court. Didn't this evidence that was erroneously relied on by the court play a significant role in the court's ruling here and then how then does the state show that this was harmless beyond a reasonable doubt in the face of that? Well regarding the misstatement of when specifically Randy Nesby interacted with Jamari Watkins and Jaquan Howard ultimately the trial court considered the crux of the defendant's argument regarding that particular interaction specifically defendant contended that his demeanor was not consistent with that of an individual who just shot multiple people. Well Randy Nesby testified that Jamari was nervous acting weird pacing around and because Jamari Watkins was somebody who drove defendant away from the scene of the crime as a as an accomplice that goes to that particular argument. As a result while the trial court misspoke regarding when specifically Randy Nesby interacted with Jamari Watkins saying that the interaction took place before the trip to Peoria versus after nevertheless that misstatement did not violate the defendant's due process right because the trial court considered the crux of the defendant's argument specifically in that aspect. Additionally the the stake the trial court did not abuse its discretion by entering into evidence these inconsistent statements for substantive purposes. In order to to do that the statements need the declarant needs to testify needs to be cross-examined on the statements they must be inconsistent and under Illinois law the failure to remember the somebody's prior statement specifically the subject matter of those prior statements constitutes inconsistency. The prior statements must be electronically recorded and the declarant must have personal knowledge of those statements of the subject matter of those statements. Now you don't agree with opposing counsel that the inconsistency must be with regard to subject matter? No and that goes to Illinois law has asserted that the that this witnesses were permitted to simply say I don't remember any of this then that would defeat the purpose of of the statute because it would allow witnesses to simply say I don't remember anything and ultimately act as turncoat witnesses for the the party that called them. Accordingly when both Navarro Howard and Keontae Hinkle specifically testify that they did not recall specific statements that they made in fact Keontae Hinkle testified that he did not recall any of the interview that he gave with detectives. These statements were then prior inconsistent statements because the failure to recall or the testimony that you failed to recall constitutes inconsistency under under Illinois law. And the at two different times Navarro Howard said that he did not remember telling detectives about the feelings of animosity that Nate Payne or that defendant harbored toward Nate Pena therefore they were inconsistent statements and the defendant had personal knowledge of those statements because he heard them from the defendant himself. Through those conversations defendant explicitly told Navarro Howard how he about about Nate Pena. In fact at at R-736 the state presented the prior statement and you replied yeah I know all this because of the shit he was talking. Forgive the language just quoting the record this demonstrates that the personal knowledge came directly from the defendant himself such that Navarro Howard is able to hear both the defendant's words and defendant's demeanor regarding his animosity toward Nate Pena. So if I understand your argument then defendant's statements to Howard establish the personal knowledge of Howard is that right? Yes. Okay. So as a result the statements regarding the animosity from the defendant toward Nate Pena were properly admitted for substantive purposes. And the same is true regarding regarding Howard's prior statements regarding the defendant's possession of a .38 caliber pistol. The Navarro Howard said that he believed based on talking with with the defendant that he had a .38 caliber pistol. Those prior statements were presented to the to Howard and Howard response was no I owned a .38 myself that's the first number in my head. That is inconsistent with his statements during the interview with detectives and again he has personal knowledge of this based on his interactions with the defendant. Accordingly the trial court did not abuse its discretion by admitting this evidence for substantive purposes. But even if this court finds that that evidence was improperly entered Randy Nesby testified that defendant had access to all different kinds of guns. I believe the direct quotation is multiple different kinds of guns at the residence of Jamari Watkins and Jaquan Howard where Randy Nesby saw the defendant frequently. So the state presented through two different avenues the fact that the defendant had access to the firearms which ultimately were used to kill three people and seriously wound a argues should not have been entered specifically. Kianta Hinkle testified that he knew that the defendant had cut his hair after the shooting. Well as previously stated Kianta Hinkle denied any recollection whatsoever of the interview with the detectives. So any statement that came from that interview was then a prior inconsistent statement because a failure to recollect constitutes inconsistency and Kianta Hinkle had personal knowledge of the haircut because he conducted a snapchat call with the defendant soon after the shootings occurred. Snapchat is a video chat app which allows you to see the face and appearance of the person with whom you're speaking and therefore because Kianta Hinkle saw the defendant Kianta Hinkle had personal knowledge of the defendant's haircut. But again even if this court finds that that evidence should not have come in in this way the state presented Detective Tim Powers testimony regarding defendants post-shooting haircut when Detective Powers went to Wisconsin to retrieve a defendant. Powers testified that previously defendant had short braids or short dreadlocks and he had a very short buzz cut when he retrieved it. Accordingly all of these prior inconsistent statements were properly admitted for substantive purposes and the the trial court allowed Hinkle to testify without swearing or affirming that he would tell the truth. Error for the trial court to do that? No your honor the the trial court acknowledged this at the beginning of Hinkle's testimony but it was not. Well I'm sorry go ahead finish your answer. It was not it was not error. Well if it was an error I mean how was it not prejudicial? Ultimately it is up to the fact fighters to determine how much credibility that they are because first and foremost as previously discussed the whatever harmful testimony came from Keontae Hinkle was duplicated by other testimony and other evidence presented by the state and then the trial court explicitly stated that it would take into account the fact that Hinkle was not sworn when determining the credibility of Hinkle's testimony. Thank you. What's what's the value of that testimony Hinkle's testimony not being sworn? I understand it attracts other testimony but on its own accord what's the value of it? Ultimately and at this point in time I will admit that I can't get into the mind of the observation of defendants post-shooting haircut adds one more brick on onto the house of of the the evidence pointing to defendants guilt that allowed the states to argue that defendants not only fled the fled Bloomington immediately after the shooting took place defendant ultimately fled the state and changed his appearance. Back to the non-sworn testimony what's your best authority that there's any credibility to be had from admitting such testimony? Well even if this court throws out Keontae Hinkle's testimony entirely the meaningful evidence that came from his testimony is is duplicated and reinforced through other evidence and the state's case against defendant who overwhelmingly demonstrated his guilt. So you don't proffer any authority to advance your position that the court should give some evidentiary value to the testimony at all or consideration by the prior fact? No, your honor. Before for the as the state has discussed the the evidence was was overwhelmingly we have evidence that defendant harbored ill will and jealousy toward Nate Pena. He had access to the caliber firearm that was used in the shooting. Breonna Watkins testified that when she came home there were four other people in the apartment. Defendant Nate Pena, Nate Pena's son and Corey Jackson and she testified that they were still there when she left the apartment. She testified she did not hear the door which makes a distinctive sound and that would indicate whether somebody came or left the apartment while she was still there. She testified she did not see anybody come into the apartment complex as she was leaving. Her cell phone disconnected from the apartment's wi-fi at 2.32 p.m. We know the shooting occurred no later than 2.35 p.m. because that's when the neighbors at the apartment below took a picture of the the water coming down their window from the apartment above which was which occurred after a bullet pierced the radiator in apartment nine and at 2.37 a defendant is seen fleeing the apartment complex getting into the trailblazer and leaving. Immediately after that a defendant changes his clothes. He has a friend drive him to Peoria and when their car breaks down as opposed to somebody without an urgency to leave might wait and leave the following day after the car is fixed but instead defendant calls another friend to drive him over to Peoria and after the day after he cancels his cell phone subscription he subsequently leaves the state and alters his appearance. That and the other evidence highlighted in the state's brief the state argues overwhelmingly demonstrated the defendant's guilt such that if this court finds that any error occurred it was harmless error and for those reasons this court should affirm the trial court's judgment. Counsel I have a the state's concession on the minimus issue. Defendant argues that the code of corrections his interpretation of the code of corrections is even though there's three murdered people there can only be one life sentence and the state concedes that. I can't say that I've ever heard of that before so I'm asking is there any authority where there are three murdered people other than your interpretation and the defendant's interpretation of the statute that says there can only be one sentence given by the trial court? Based on the plain language of the statute it is the state's interpretation uh or this is the state's belief that uh that a defendant can receive a maximum of one life murders uh and that is what has motivated the the state's concession uh the state does not proffer any case law at this time to support that the state relies on its uh plain language interpretation of the statute. So the fact that there are three people killed doesn't mean there can be three sentences and there could be 50 people killed and there's only one life sentence that's the state's interpretation? Well there can be multiple sentences um but in terms of there there can only be one life sentence. Well what would be the other sentences then? Well uh because the state... No what what other sentences could be imposed by the trial court? Less than a life sentence um in the instant case uh the state recommends that uh the minibus be corrected to show one life sentence but then also the 50-year sentence because of the attempted murder of of Nate Pena's son. If there are no further questions uh the state rests on its brief remaining regarding the remaining issues and yields the rest of its time. Thank you. Thank you Mr. Malcolm. Is there any rebuttal Mr. Wright? I think just a few brief points your honor and I think where I start from all this is that the the importance of motive evidence in this case and the importance of the erroneous evidence is demonstrated and this kind of came out in the briefing was that it's the first thing that the state points out it's the first thing the state relies on and that demonstrates the weakness of the other evidence but moving on I just have a under the the state says that it would undermine the purpose of the statute um section 115-10.1 if witnesses could just walk up and say I don't remember their interview um and then get away with not testifying about the subject matter but I don't think that really encapsulates the issue. The state could like I said earlier the state could have brought these use these prior statements to impeach Navarro if Navarro had actually testified about anything that related to that impeachment so it doesn't undermine the purpose of the statute it just requires the prosecutor to ask the right questions which is a we expect lawyers at every trial to do that. Again on the personal knowledge issue the state in its brief and today didn't acknowledge the decision of people versus Simpson and on Chianti Hinkle I they had to FaceTime but the state ignores that his response to the testimony was what have you heard Sidney's done he said cut his hair so that's not that's not personal knowledge I don't that's just not conversation to say I know that he did this when you say what have I heard there's no clarification and then I dispute that it's duplicative right the state says that it was even if we kick it out Chianti Hinkle's testimony was also served purpose from Detective Power um Detective Power but Detective Power didn't interview Chianti until what July 10th and Chianti had this FaceTime conversation at some other time so they're not duplicative of each other but um even if this court doesn't consider does not reach the Chianti Hinkle issue I think the discussion we've had today really shows the importance of the at least the first four errors discussed in arguments one and two and I would ask this court to reverse and remain for the trial or alternatively to remand for additional crankle proceedings where attorney Clancy was unaware of the most critical evidence placing Sidney in the apartment with that last being at 212 instead of 232 and if there are no questions on that I will rest on my briefs and thank the court I have a question yes sir counsel what's your you know aside from the substance of the testimony of Hinkle what's your best authority or position with regard to unsworn testimony how do we how do we deal with that which testimony I'm sorry oh the unsworn testimony did not take an oath oh so my my best authority is well well the the Harrington case Griffin I believe Griffin Harrington in the brief was pretty on point as to why that um why that was prejudicial and we see that counsel's review of the evidence in the record demonstrated to him that Chianti Hinkle's testimony was inadmissible and prejudicial to the defense he vigorously challenged it and the court heard arguments from the parties multiple times about his prior statements so it just stands to reason why would counsel not object when this testimony is clearly barred by the rules of the statute that's been passed by the court the court really does not object to the fact that Chianti Hinkle swore or affirmed to nothing close to saying that his conscience felt compelled to actually testify truthfully his credibility or lack thereof is entirely irrelevant if counsel just doesn't object so the court shouldn't have been able to consider his testimony the fact that he did okay Mr. Wright do you have any further argument or are you finished uh no your honor we would ask this court reverse and remand for a new trial or alternatively additional critical proceedings okay thank you Mr. Wright thank you Mr. Malcolm the case is now submitted and the court stands in recess